IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 18-524 |
| VICTOR CLAYTON | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                 **JULY 8, 2022**

Presently before the Court is Defendant Victor Clayton's *pro se* Motion to Withdraw the Guilty Plea Pursuant to Rule 11(d)(2)(B).  (ECF No. 181.)  For the following reasons, Defendant's Motion will be denied.

**I.     BACKGROUND**

In February and March of 2018, Defendant sex trafficked Minor 1, aged 16, and Minor 2, aged 15.  (Tr. of Guilty Plea Hr'g at 15, ECF No. 182.)  Defendant took photos of Minor 1 that he posted in Backpage advertisements about her, and then transported her to various hotels around Philadelphia, knowing that she would be caused to engage in commercial sex acts.  (*Id.* at 15-16.)  On March 12, 2018, Defendant drove Minors 1 and 2 from Pennsylvania to North Carolina.  Minor 1 spoke with Minor 2 about engaging in commercial sex acts and how Minor 2 would be part of the "team."  (*Id.* at 16.)  Defendant transported the minors to a room that he rented at the Baymont Inn and Suites in Dunn, North Carolina, knowing that both minors would be caused to engage in commercial sex acts there.  (*Id.* at 17.)

On July 24, 2019, a grand jury returned a two-count Indictment charging Clayton with knowingly recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining

Minor 1 and Minor 2, and attempting to do so, knowingly and in reckless disregard for the fact that Minor 1 and Minor 2 were under the age of 18 and would be caused to engage in commercial sex acts, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a).  (ECF No. 1.)

Throughout his pretrial proceedings and trial, Defendant repeatedly changed his mind about whether he wanted counsel to represent him.  On May 22, 2019, Defendant filed a *pro se* motion to remove his court-appointed attorney, Luis Ortiz, Esquire.  (ECF No. 21.)  On June 5, 2019, Defendant and counsel then jointly filed a motion to withdraw his motion to remove counsel, (ECF No. 22), which the Court granted the following day.  (ECF No. 23.)  On July 19, 2019, Defendant filed a motion to proceed *pro se*.  (ECF No. 28.)  After a hearing and colloquy on August 26, 2019, the Court granted Defendant's request to proceed *pro se* with Mr. Ortiz as standby counsel.  Later that afternoon, the Government filed a Motion for Reconsideration, requesting that the Court ask Defendant additional questions as part of his colloquy to determine if his waiver of counsel was knowing and intelligent.  On October 14, 2019, Defendant filed a motion to appoint Caroline Goldner Cinquanto, Esquire, in addition to standby counsel Mr. Ortiz.  (ECF No. 43.)  Pursuant to Defendant's request and following a hearing on October 15, 2019, the Court appointed Ms. Cinquanto as standby counsel.  (ECF No. 44, 45.)  On March 10, 2021, Defendant requested that the Court remove standby counsel.  (ECF No. 96.)  Following another hearing and colloquy on May 24, 2021, the Court directed both standby counsel to continue to assist Defendant.  (ECF No. 104.)  On October 18, 2021, Defendant again requested to remove standby counsel.  (ECF No. 130.)  At a status conference held on November 8, 2021, one week before trial, Defendant withdrew his request to remove standby counsel.  (ECF No. 143.)  Defendant asserted that he wished to proceed to trial *pro se* with standby counsel.  (*Id.*)

At trial, on November 16, 2021, Defendant proceeded *pro se* and made an opening statement to which the Court sustained many appropriate objections. Shortly after, Defendant conferred with standby counsel and requested that the Court permit both Mr. Ortiz and Ms. Cinquanto to represent him. (11/16/21, Tr. Trans., 41, ECF No. 184.) After speaking with Defendant—who informed the Court that having counsel represent him would be in his best interest—the Court granted this request. (*Id.* at 41-42.) Defendant did not ask to proceed by way of hybrid representation. Following the testimony of two witnesses, the Court recessed. During the recess, counsel informed the Court that Defendant wished to enter a plea of guilty. Among other provisions, the guilty plea contained the following language about which Defendant now complains:

> The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to five years per count of conviction. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release. *If the defendant violates supervised release by committing one or more specified child exploitation offenses, the court will revoke supervised release and require the defendant to serve an additional term of imprisonment of at least 5 years pursuant to 18 U.S.C. § 3583(k).*

(Plea Document, 3, ECF No. 177) (emphasis added). Following a thorough colloquy, Defendant entered a plea of guilty to two counts each of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a). The plea agreement stipulated that Defendant would be sentenced to, among other things, fifteen years in prison followed by ten years of supervised release. (*Id.* at 1.) The Court deferred acceptance of the plea until after review of the pre-sentence report and dismissed the jury.

Defendant filed the instant *pro se* Motion, requesting that we permit him to withdraw his guilty plea. This Motion will be denied.

## II. LEGAL STANDARD

The decision to permit hybrid representation—where a defendant acts as co-counsel to his attorney—is entirely within a district court's discretion. *United States v. Moro*, 505 F. App'x 113, 115 (3d Cir. 2012). Courts have no obligation to consider a defendant's *pro se* filings when the defendant is represented by counsel. *See McKaskle v. Wiggins,* 465 U.S. 168, 183 (1984); *United States v. D'Amario*, 256 F. App'x 569, 571 (3d Cir. 2007). This is because "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." *Id*.

"Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). If a defendant moves to withdraw his or her guilty plea before the Court imposes a sentence, the Court must permit withdrawal if the defendant shows a "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). When evaluating a defendant's motion to withdraw, courts consider: (1) whether the defendant asserts his or her innocence; (2) whether the withdrawal would prejudice the Government; and (3) the strength of the defendant's reason to withdraw the plea. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). "[A] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

## III. DISCUSSION

Defendant asserts numerous errors, primarily errors of counsel, that he claims should allow him to withdraw his guilty plea. His request to withdraw his guilty plea will be denied. As an initial matter, the Court will deny Defendant's Motion because he has improperly

proceeded by way of hybrid representation. Even if Defendant had filed his Motion properly through counsel, it would still be denied. Defendant's supposed factual assertion of innocence is merely an irrelevant complaint about the quality of the testimony offered at the grand jury proceedings, and his claim of legal innocence is based on a discredited theory that he repeatedly raised throughout the pre-trial stage. Moreover, the Government would be prejudiced if the Defendant were able to enter a plea of guilty mid-trial, when the Government was prepared to present its case, and later change his mind. Finally, Defendant's various complaints about counsel's performance are belied by the record. Because Defendant has not shown that there is any fair and just reason to permit withdrawal of his guilty plea, his Motion will be denied.

> A. **Defendant may not file his Motion *pro se* because he is represented by counsel.**

While "[a] defendant does not have a constitutional right to choreograph special appearances by counsel," *McKaskle,* 465 U.S. at 183, the entirety of Defendant's pre-trial and trial proceedings can be described as just that. During the pretrial stage, he repeatedly waffled between proceeding *pro se* and being represented; at trial, he demanded to proceed *pro se*; after his opening statement, he insisted on a special appearance by counsel to cross-examine two witnesses and negotiate his guilty plea; he now files this motion *pro se*, asserting ineffective assistance, despite being currently represented by counsel. Defendant's indecision has resulted in numerous hearings, colloquies, and filings on the issue of his representation alone. Defendant's plethora of meritless pre-trial motions consumed and wasted the Court's time. We will not entertain yet another one of Defendant's meritless attempts to delay or distract from the litigation at hand. Defendant's request to withdraw his plea will be denied because he is attempting hybrid representation, and we have not granted him leave to do so.

### B. Even if Defendant had properly filed his Motion, he would not be entitled to withdraw his guilty plea.

*1. Defendant failed to adequately assert his innocence.*

Defendant asserts that he is factually innocent because he claims that the testimony given at his grand jury hearing was weak. He also asserts that he is legally innocent because, according to him, the Trafficking Victims Protection Act (TVPA) exceeds Congress's constitutional powers and only criminalizes international sex trafficking, not interstate sex trafficking. Defendant is simply wrong.

In order to assert innocence for the purpose of withdrawing a guilty plea, a defendant's assertion must "be buttressed by facts in the record that support a claimed defense." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (internal citation omitted). "Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Id.* In addition to factual innocence, legal innocence—which occurs when "the government would be unable to prove its case against [the defendant] beyond a reasonable doubt"—can also support a finding of innocence for the purpose of withdrawing a plea of guilty. *United States v. James*, 928 F.3d 247, 254 (3d Cir. 2019).

Defendant can make no showing of factual or legal innocence. Defendant's complaints about the strength of the Government's evidence presented to the grand jury do not amount to factual innocence. The evidence that the Government proffered during his guilty plea colloquy, as summarized in Section I, is more than sufficient to convict him of these charges. And Defendant admitted that all of those facts were true. (Tr. of Guilty Plea Hr'g, 18.) Defendant's opinion about the quality of testimony offered at the grand jury hearing is irrelevant to his guilt or innocence. Defendant has made no more than a bald claim of innocence. Obviously, that is insufficient. *Jones*, 336 F.3d at 252.

Moreover, Defendant's claim of legal innocence regarding the TVPA is wrong. Defendant asserted throughout the pretrial proceedings and even up until the day of trial that he could not be charged with sex trafficking because he alleged that that Congress lacked the authority to pass the TVPA and the TVPA only criminalizes international sex trafficking, not interstate sex trafficking. This Court rejected these baseless claims numerous times and issued an order detailing its rejection of his claims, reasoning:

> With regard to Defendant's first argument that § 1591 only criminalizes international sex trafficking, the argument is directly contradicted by the statutory language. Section 1591(a) makes it a crime to "knowingly . . . *in or affecting interstate or foreign commerce* . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person . . . knowing. . . that the person has not obtained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1529(a)(1) (emphasis added). The statute makes it explicit that sex trafficking affecting both interstate and foreign commerce are punishable. The intent to criminalize domestic sex trafficking is also reflected in the stated purpose of the TVPA, which is found at 22 USC § 7101. There, it states Congress's purposes and findings of the TVPA, one such finding being that "[t]rafficking in persons substantially affects interstate and foreign commerce." 22 U.S.C. § 7101(b)(12). Moreover, the Third Circuit has on many occasions upheld convictions for sex trafficking under Section 1591 where the convicted conduct was purely domestic and not international. *See, e.g., United States v. Doe*, 785 F. App'x 57, 59 (3d Cir. 2019); *United States v. Senat*, 698 F. App'x 701, 703 (3d Cir. 2017).
>
> Defendant's second argument—that Congress did not have the authority to pass § 1591 and regulate interstate sex trafficking—is also unavailing. Defendant contends that Congress lacked the power under the Constitution's Necessary and Proper Clause to expand the scope of an international treaty dealing with sex trafficking—the United Nations Convention Against Transnational Organized Crime and the Protocols. In particular, Defendant contends that the international treaty demands that state parties criminalize certain offenses that are transnational in nature, and that § 1591(a) goes well beyond this in punishing purely domestic conduct. Not surprisingly, Defendant has offered no cases to support his argument that § 1591(a) is unconstitutional. This is because Congress's authority to enact the TVPA does not derive from an international treaty, but instead from the Commerce Clause of the Constitution.
>
> Under the Commerce Clause, Congress has the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). Congress

7

> has concluded that trafficking of persons "substantially affects interstate and foreign commerce." 22 U.S.C. § 7101(b)(12); *see also United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) ("Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce . . . and we cannot say that this finding is irrational.").
>
> Every court that has considered whether the TVPA and specifically whether § 1591's prohibition of interstate (as opposed to international) trafficking is a valid exercise of Congress's authority under the Commerce Clause, has concluded that it is. *See, e.g., United States v. Walls*, 784 F.3d 543, 548-49 (9th Cir. 2015) (concluding that the Commerce Clause gave Congress authority to regulate human trafficking and enact the TVPA); *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) (affirming constitutionality of § 1591 and the TVPA as applied to the defendant's human trafficking, which occurred solely in Florida); *United States v. Campbell*, 111 F. Supp. 3d 340, 346 (W.D.N.Y. 2015) (concluding that § 1591 was a valid exercise of the Congress's power under the Commerce Clause and that the defendant's conspiracy to commit sex trafficking, which occurred solely in New York, had a substantial impact on interstate commerce); *United States v. Paris*, No. 06-64, 2007 WL 3124724, at *8 (D. Conn. Oct. 24, 2007) (rejecting argument that Congress lacked power to regulate purely national sex trafficking).

(Order, ECF No. 154.) Defendant was also forbidden from making these incorrect arguments before the jury in his proposed opening statement slideshow presentation, as such arguments were not within its purview and would only serve to confuse the issues. Defendant's persistence in making a meritless claim will not satisfy the legal innocence standard. Defendant has failed to show that he is legally or factually innocent.

### 2. *The Government would be prejudiced by Defendant's withdrawal.*

Defendant also baselessly asserts that the Government would not be prejudiced if he were permitted to withdraw his guilty plea. However, where the Government is ready for—and in this case proceeds to—trial, prejudice is presumed. *United States v. Crowley*, 529 F.2d 1066, 1072 (3d Cir. 1976) (finding "[t]he existence of prejudice to the Government through defendant's entering the plea on the day of trial . . . when jurors, witnesses and court personnel had been assembled for the trial, and then making the request for withdrawal of the plea several days later . . ."); *United States v. McLaughlin*, 647 F. App'x 136, 142 n.4 (3d Cir. 2016) (observing that

"the [G]overnment would be prejudiced" where the defendant entered a guilty plea on the first day of trial and withdrawal of the plea would force the Government to "reassemble witnesses, court personnel and jurors, all of which had already been assembled once on the day McLaughlin pleaded guilty"); *United States v. Davis*, 106 F. App'x 788, 790 (3d Cir. 2004) ("it clear that the [G]overnment would suffer some degree of prejudice because Davis entered his plea on the day the trial was set to begin"). Here, the Government offered the testimony of two witnesses before Defendant entered his plea of guilty, including the testimony of a police officer who had traveled to Pennsylvania from North Carolina for trial. In addition, the Government would have been required to offer the testimony of the two victims of sex trafficking, who were minors at the time of the offenses. Defendant's choice to withdraw his guilty plea would prejudice the Government by greatly inconveniencing its out-of-state witnesses, its young victim-witnesses, and all the other witnesses expected to testify. Permitting Defendant to withdraw his plea would undoubtedly prejudice the Government.

        3. *No strong reason merits permitting Defendant to withdraw his guilty plea.*

Finally, Defendant baselessly asserts that he did not knowingly and voluntarily enter his guilty plea. Defendant makes numerous complaints about counsel's performance, all of which are belied by the record. Defendant has not raised any viable reason why he should be permitted to withdraw his plea of guilty.

First, Defendant asserts that counsel incorrectly informed Defendant that the maximum allowable fine for his convictions was the minimum required by statute and never told Defendant which appellate rights he would forfeit following his plea. (Def.'s Mot., 3, 5). However, the Court correctly informed Defendant of the fines and his remaining appellate rights at the plea hearing. (Tr. of Guilty Plea Hr'g at 7-9.) Second, Defendant asserts that he was told he needed

to accept or reject the offer immediately, and that neither counsel were prepared for trial and had no defense.  (Def.'s Mot., 3-4.)  We do not doubt that the Government would not leave such a generous offer open for Defendant to take at his convenience after the jury had been empaneled.  Moreover, even if Defendant were correct that counsel was unprepared, this would likely be a result of Defendant's actions; he repeatedly insisted that he would represent himself and then made a bizarre, incriminating opening statement that would have left any lawyer fumbling for a viable strategy.  Third, Defendant complains that counsel incorrectly advised Defendant's family, who spoke with him prior to his plea, that the agreement was for ten years of imprisonment and would run concurrently to any violation of supervised release.  (*Id.* at 4.)  What Defendant's family believed is of no consequence.  Defendant was correctly informed of the terms of his plea both in writing and orally, and he told the Court that the Government made him no promises outside of the written agreement.  (Tr. of Guilty Plea Hr'g at 12.)  Fourth, Defendant asserts that counsel failed to inform him that he could have requested a continuance or extended recess to consider the plea.  (Def.'s Mot., 5.)  The Court granted the Defendant additional time following the lunch recess to negotiate.  Considering the fact that the trial had begun, a request for further time would not have been granted.  Fifth, Defendant asserts that he did not admit to any wrongdoing following the plea colloquy.  (Def.'s Mot., 7.)  The transcript from the hearing shows that is patently false.  (Tr. of Guilty Plea Hr'g at 18.)

In addition, Defendant asserts that, despite his sworn statement to the court that he was satisfied with counsel's performance, (*id.* at 9-10), Defendant had in fact lied to the Court that he was satisfied with counsel's performance "simply to move the process alon[g] because at that point it felt pointless to say no."  (Def.'s Mot., 5).  Defendant has proffered no evidence that could overcome the strong presumption that Defendant was telling the truth when he entered his

10

plea under oath before the Court. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ( "Solemn declarations in open court carry a strong presumption of verity."); *United States v. Thomas*, 165 F. App'x 138, 141 (3d Cir. 2006) (holding that a defendant's motion to withdraw his plea based on ineffectiveness was "undermined by his statements at his plea colloquy that he was satisfied to have his lawyer represent him").

Furthermore, Defendant complains that counsel failed to inform him that he could have proceeded *pro se* if he wished. (Def.'s Mot., 5.) His assumption is false. As described above, Defendant repeatedly changed his mind about whether to have counsel represent him, and he began litigating the trial *pro se* with standby counsel. The Court would not have entertained another request—the second during the jury trial alone—to change his representation status. Defendant's desire to continue to waffle about his representation status is not valid reason to withdraw his plea of guilty.

Finally, Defendant asserts a new argument in his reply brief, (ECF No. 190), that his sentence was illegal because his plea agreement contained a provision asserting that any violation of supervised release for committing certain child exploitation crimes would result in an additional minimum of five years in prison, pursuant to 18 U.S.C. § 3583(k) without a jury deciding the underlying facts. Defendant correctly states that Section 3583(k) was ruled unconstitutional in *United States v. Haymond*, 139 S. Ct. 2369 (2019), because the sentence would only be imposed upon a judicial factual finding, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013).

This provision of the plea agreement, which incorrectly states the law, does not necessitate withdrawal. *Apprendi* held that "any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  An *Apprendi* violation occurs only where there is improper judicial fact finding and a sentence that exceeds the original statutory maximum sentence.  *See United States v. Williams*, 235 F.3d 858, 863 (3d Cir. 2000) ("*Apprendi* is not applicable to Williams' sentence, because the sentence actually imposed (seven years and one month) was well under the original statutory maximum of 20 years.").  The Third Circuit observed that the *Apprendi* decision suggests that "a District Court's sentence that is under the statutory maximum cannot be constitutionally objectionable under *Apprendi*."  *Id.*; *see United States v. Luciano*, 311 F.3d 146, 151 (2d Cir. 2002) ("Violation of *Apprendi* arises when the defendant is sentenced on the basis of a triggering fact not found by the jury to a sentence that exceeds the maximum that would have been applicable but for the triggering fact."); *United States v. Robinson*, 241 F.3d 115, 121 (1st Cir. 2001) ("theoretical exposure to a higher sentence, unaccompanied by the imposition of a sentence that in fact exceeds the otherwise-applicable statutory maximum, is of no consequence.").  Defendant's alleged *Apprendi* violation is an entirely theoretical assertion of harm.  Because he has not been sentenced as a result of judicial fact-finding, no *Apprendi* error occurred.[1]

---

[1] Moreover, even if the provision was in error, it was harmless because Defendant cannot show that absent the provision—which is unenforceable but appeared to result in a higher sentence—he would not have entered a plea of guilty.  *See United States v. Dixon*, 308 F.3d 229, 236 (3d Cir. 2002) (holding that the possibility that the defendant would not have plead guilty had the court not overstated the maximum sentence was insufficient to establish error); *United States v. Powell*, 269 F.3d 175, 185 (3d Cir. 2001) (establishing that the test for harmless error is "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.").

## IV.     CONCLUSION

For the foregoing reasons, Defendant's *pro se* Motion to Withdraw the Guilty Plea Pursuant to Rule 11(d)(2)(B) will be denied.  An appropriate order follows.


**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**