**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 18-524** |
| **VICTOR CLAYTON** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant prostituted a 16-year-old girl at hotels in Philadelphia, and then recruited her 15-year-old friend, and drove both minors to North Carolina intending to profit from selling them for sex there. Given the defendant's actions, the danger he poses to the public, and the need for adequate punishment and deterrence, the government asks the Court to sentence the defendant to 180 months' incarceration, as agreed by the parties in their plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir.

2006); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)); *see also United States v. Smalley*, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the *Gunter* directive is consistent with later Supreme Court decisions). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329; *see also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view that the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors should result in a sentence of 180 months in prison.

## I. BACKGROUND

Minor 1, age 16, met the defendant in February 2018 through her 17-year-old friend. The defendant was 43 at the time. Minor 1 had recently left a juvenile detention center after her mother, who had been in a drug rehabilitation program, had kicked her out of the house. The defendant and the two minors went to the defendant's mother's house on Sanger Street in Philadelphia. Minor 1's friend indicated that she was prostituting on an internet website known as Backpage.com and providing the defendant with half the proceeds. Minor 1 was immediately initiated into the scheme at a local Philadelphia hotel, the Motel 6. The defendant took photographs of Minor 1 for a Backpage advertisement, unknown men called the number in the ad, Minor 1 was paid for sex, and she provided a portion of the proceeds to the defendant. Over the course of a few weeks, the defendant caused Minor 1 to engage in commercial sex at multiple Philadelphia locations, including the Motel 6, Days Inn, Hub Motel and North American Motor Inn, as well as a house in New Jersey. Presentence Report ("PSR") ¶¶ 16, 18-21.

On approximately March 12, 2018, Minor 1 was contacted by her friend, Minor 2, age 15, who had run away from a group foster care placement in Delaware. The defendant drove Minor 1 in a car rented by his mother to the area of Linwood, Pennsylvania to pick up Minor 2, and drove both minors back to his mother's house on Sanger Street in Philadelphia, where they stayed the night. Minor 1 and the defendant explained to Minor 2 how they would advertise Minor 2 on Backpage and how she would make money prostituting. On March 13, 2018, the defendant drove Minor 1 and Minor 2 to Dunn, North Carolina in the rental vehicle. On the way, they stopped at the Delaware Travel Plaza, where the two minors were captured on surveillance cameras in the food court. Once in Dunn, the defendant rented a room in his name, in cash, for two nights at the Baymont Inn and Suites. Minor 1 told the defendant she was menstruating and

could not engage in commercial sex but the defendant said he would post advertisements for her anyway. The defendant told Minor 2 to delete her social media accounts and she complied. The defendant purchased various toiletries, food, and clothing items for the minors in Dunn. On one occasion while staying at the hotel, the defendant made Minor 2 stroke his penis. On a second occasion, the defendant made Minor 2 perform oral sex on him. *Id.* ¶¶ 22-26 & n.1.

On the morning of March 15, 2018, Minor 2 pretended she was going to smoke a cigarette and went outside the room and text messaged her mother to contact the police, which her mother did. When the police arrived, they found Minor 2 in the outside stairwell, and the defendant in the room in bed with Minor 1. A statement was taken from Minor 2 regarding the forced oral sex. Law enforcement interviewed the defendant, who claimed he was there to sell some vehicles, didn't know anything about Backpage, and was simply helping the teenaged girls, who were runaways and homeless. The defendant was arrested on local charges of indecent contact with a minor. At the time, he was on federal supervised release for bank fraud. *Id.* ¶¶ 27-30 & n.2. Agents later interviewed the defendant's boss, who stated he had not sent the defendant to North Carolina to sell cars or for any other reason. *Id.* ¶ 28 n.3.

The defendant was charged by federal Indictment with two counts of sex trafficking and attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591, 1594(a) (Counts One and Two). Trial began on November 15, 2021. On November 16, 2021, defendant pled guilty to the charges pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C).

## II. SENTENCING CALCULATIONS

### A. Statutory Minimum and Maximum Sentence.

The mandatory minimum and maximum sentence for each violation of 18 U.S.C. §§ 1591, 1594(a), is 10 years' mandatory minimum imprisonment, lifetime maximum

imprisonment, a 5-year mandatory minimum period of supervised release up to a lifetime period of supervised release, a $250,000 fine, and a $100 special assessment. In addition, if the defendant is found to be non-indigent, an additional $5,000 special assessment will be imposed.

The total minimum and maximum penalty is: 10 years' mandatory minimum imprisonment (20 years' if consecutive), lifetime maximum imprisonment, a 5-year mandatory minimum period of supervised release up to a lifetime period of supervised release, a $500,000 fine, a $200 special assessment, and an additional $10,000 assessment if the defendant is found to be non-indigent. Restitution shall be ordered. Forfeiture also may be ordered.

**B. Sentencing Guidelines Calculation.**

The Probation Office applied U.S.S.G. § 2G1.3 for a base offense level of 30. PSR ¶ 41. Two points were added because the minors were in the defendant's custody, care or supervisory control, pursuant to 2G1.3(b)(1)(B); two points were added for unduly influencing the minors by causing Minor 1 to have commercial sex while menstruating and sexually assaulting Minor 2, pursuant to 2G1.3(b)(2)(B); two points were added for the defendant using his cellular phone to post advertisements of Minor 1 to engage in sexual conduct, pursuant to 2G1.3(b)(3)(B); and two points were added because the offenses as to both Minor 1 and Minor 2 involved the commission of a sex act, pursuant to 2G1.3(b)(4)(B). Thus, the Probation Office arrived at an adjusted offense level of 38 for Minor 1 and 36 for Minor 2. Two levels were added for two units to the highest group total, leading to a combined adjusted offense level of 40. *Id.* ¶ 61. Five points were added because the defendant is a repeat and dangerous sex offender, and three points were subtracted for acceptance of responsibility, making his total offense level 42. *Id.* ¶ *65.* Defendant's criminal history score is 15, placing him in Criminal History Category VI. *Id.* ¶¶

78-80. A total offense level of 42 and Criminal History Category of VI results in a guidelines range of 360 months to life.

The defendant raised *pro* se objections in supplemental filings (D.E. #198 and #201) to object, among other factual objections, to the application of the two-point enhancement for the minors being under the defendant's custody, care or supervisory control, the two-point enhancement for undue influence, the two-point enhancement for commission of a sex act, and the five-point adjustment for repeat and dangerous sex offender. Following the government's response, the Court overruled all of these objections, save a portion of the objection to paragraph 19, in an order dated September 14, 2022 (D.E. #217).

## III. PROCEDURAL HISTORY

The defendant moved again to proceed *pro se* on June 9, 2022 (D.E. #196), and has since been filing documents *pro se*. This motion remains outstanding as of this filing. The government requests that the Court address the status of the request at the outset of the sentencing hearing so that the defendant's representation is clear, and if necessary, conduct a colloquy pursuant to *United States v. Peppers*, 302 F.3d 120, 136-37 (3d Cir. 2002), before sentencing the defendant.

## IV. ANALYSIS

A thorough consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that this Court should consider the calculation of the advisory guidelines as set forth in the Presentence Investigation Report, the calculation set forth in the plea agreement, review all other factors, and impose a sentence of 180 months in prison.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). As will be discussed later, the Sentencing

Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**(1) Nature and Circumstances of the Offense**

The nature and circumstances of this child sexual exploitation offense are deeply troubling and support a substantial term of imprisonment. The defendant preyed upon a 16- and 15-year-old minor with no support systems in order to use their bodies as means to make money. He treated these children as nothing more than commodities in his perverse business scheme and clearly had zero regard for their emotional health or safety, contrary to his false claims to the FBI. The defendant was happy to offer Minor 1 to countless strangers in hotels for his own profit, and to take Minor 1 and Minor 2 far from their familiar surroundings to a motel in North Carolina in order to sell their bodies for his financial gain. In addition, despite being nearly three times her age, he sexually assaulted Minor 2 in a perverse "job interview" to test her out for

engaging in commercial sex. The defendant's deviant conduct warrants a significant term of incarceration.

**(2) History and Characteristics of the Offender**

As for the history and characteristics of the now 47-year-old defendant, these factors support a 180-month sentence. According to the PSR, the defendant has been involved with the criminal justice system for his entire adult life. He is well into Criminal History Category VI, having been convicted of theft (1996 - age 20) (2 parole revocations); forgery (2001 - age 25) (3 parole revocations); forgery (2001 - age 25); retail theft (2001 - age 25) (committed while on bail); forgery (2001 – age 26); forgery (2001 – age 26); criminal conspiracy to commit bank fraud (2005 – age 29); disorderly conduct (during a counterfeit check scheme) (2012 – age 36); possession of a controlled substance (cocaine) (2014 – age 38); and bank fraud (2014 – age 40). This most recent conviction resulted in his longest term of imprisonment to date of 36 months and 1 day. While the defendant's conduct until the instant offense was non-violent, it has been gradually increasing in severity. The defendant committed the instant offense while on federal supervised release. Defendant's past criminal behavior demonstrates an unrelenting pattern of disrespect for the rule of law.

The defendant tested positive for cocaine the day he drove the minors to North Carolina, as well as a month prior. PSR ¶ 110. It is unclear to what extent drug addiction now factors into the defendant's panoply of challenges.

**(3) The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment**

Recruiting, enticing, harboring, or transporting someone to engage in prostitution has devastating consequences on a victim – especially when the person whose body is being sold to make money is a minor. Also, as the defendant's long criminal history indicates, the agreed-

upon sentence is warranted because it will promote respect for the rule of law – something that this defendant has not shown, given his long criminal history and his conduct in committing this crime.

**(4) The Need for General and Specific Deterrence and Protection of the Public**

The crime of profiting from the sale of children for sexual exploitation, which is of increasing prevalence, must be deterred, and the Court should send a message to the countless others who would engage in this far-too-simple money-making scheme. The Court should further protect the public from additional crimes of this defendant.

**(5) Need for Education or Vocational Training**

The defendant has received a GED certificate. His employment history is minimal, sporadic and unreliable; he appears to have resorted to crime as a means of sustenance his entire adult life. Given that he reports no medical or mental health problems, the defendant would benefit significantly from vocational training to learn how to maintain legitimate employment and be a productive member of society.

**(6) Need to Avoid Unwarranted Sentencing Disparities and Need to Provide Restitution to Victim.**

The 180-month sentence is the mandatory minimum term and although it is below guidelines, falls within the heartland of sentences for this crime.

As for restitution, it is mandatory for this offense, and the government will provide this information in a separate supplemental filing prior to sentencing.

## V. CONCLUSION

In light of all of these factors, the government respectfully asks this Court to impose a sentence of 180 months' incarceration, a term of supervised release of 10 years, and restitution to be determined by the Court, consistent with the plea agreement of the parties.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

___*Michelle L. Morgan*_________
MICHELLE L. MORGAN
AMANDA R. REINITZ
Assistant United States Attorneys

Dated: September 21, 2022

**CERTIFICATE OF SERVICE**

It is hereby certified that the attached government's motion was served by electronic filing or electronic mail upon the following counsel of record:

Luis A. Ortiz, Esq.
121 South Broad Street, 18th Floor
Philadelphia, PA 19107

And by first class mail on the following defendant:

Victor Clayton, Inmate No. 71803-066
FDC-Philadelphia
P.O. Box 562
Philadelphia, PA 19106

*Michelle L. Morgan*
MICHELLE L. MORGAN
Assistant United States Attorney

Date: September 21, 2022