IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 18-524-RBS |
| VICTOR CLAYTON : | |
| : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                     **DECEMBER 27, 2022**

Presently before the Court is Defendant Victor Clayton's *pro se* Motion Objecting to Victim's Impact Statement and Government's Supplemental Sentencing Memorandum (ECF No. 239), the Government's Response thereto ("Gvt. Rsp.," ECF No. 241), and Defendant's *pro se* Reply to the Government's Response (ECF No. 245).  For the following reasons, the deadline for imposing restitution under 18 U.S.C. § 3664(d)(5) is extended for 90 days to allow the Government to present additional evidence.

Defendant entered a plea of guilty to two counts of knowingly recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining Minor 1 and Minor 2, and attempting to do so, knowingly and in reckless disregard for the fact that Minor 1 and Minor 2 were under the age of 18 and would be caused to engage in commercial sex acts, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a).  (Tr. of Guilty Plea Hr'g at 20:11-16, ECF No. 182.)  The Government requested restitution of $3,600 to Minor 1—half of the proceeds from her sex work that Defendant took for himself—and $10,400 in restitution to Minor 2 to pay for weekly psychotherapy for two years.  (Gvt. Rsp. at 2.)

The Government based its restitution request for Minor 1 on records showing that Defendant had reserved hotel rooms for a total of 15 days for the purpose of Minor 1 engaging in

commercial sex, and Minor 1's grand jury testimony that each day she was forced to have sex with approximately six clients for a minimum price of $80 each. (*Id.*) We accept this calculation of restitution for Defendant's ill-gotten gains from Minor 1. The Government followed established methodology in calculating the ill-gotten gains restitution required under 18 U.S.C. § 1593(b)(3). *See, e.g., United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1164 (9th Cir. 2010) (affirming the calculation of restitution for sex trafficking as "(average price of each commercial sex act) x (average estimated number of commercial sex acts performed) = restitution," while holding that the district court erred in applying that calculation in the case at bar).

The Government based its request for Minor 2's weekly psychotherapy on her victim impact statement, describing the trauma that Defendant's attempted trafficking and sexual assault had caused her, and an "Affidavit," in which a Government paralegal reported in an unsigned document that she had contacted the United States Department of Health and Human Services and received an estimate of the average hourly cost of such treatment in the area. (Supp. Sentencing Memo., Exhibit A.) This evidence is insufficient.

Under the Trafficking Victims Protection Reauthorization Act (TVPRA), a sex trafficking victim is entitled to mandatory restitution for the "full amount of the victim's losses . . . ." 18 U.S.C. § 1593(b)(1). The TVPRA defines this amount by reference to 18 U.S.C. § 2259(c)(2) as "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim . . . ." *Id*. This includes, *inter alia*, "medical services relating to physical, psychiatric, or psychological care" and "lost income[.]" *Id*. The Government bears the burden of proving the proper amount of restitution by

the preponderance of the evidence. *United States v. Vitillo*, 490 F.3d 314, 330 (3d Cir. 2007) (citing 18 U.S.C. § 3664(e)).

The Government did not meet its burden here. First, the Government provides no basis for its conclusion that the correct treatment for Minor 2's trauma is very specifically two (and only two) years of weekly psychotherapy. There is no doubt from Minor 2's victim impact statement, and the plain facts to which defendant pled, that she suffered severe trauma and is in need of mental health treatment. Furthermore, despite its informal presentation, we accept the Government's representation of the price of such treatment in the area. However, the suggested length and frequency of that treatment, which of course dictates its total cost, appears arbitrary and thus cannot form the basis for restitution. *See United States v. Dagostino,* 520 Fed. App'x 90, 92 (3d Cir. 2013) ("The Government submitted only one victim impact statement. The statement contained a devastating portrayal of an adult haunted by grotesque and unjustifiable wrongs done to her as a child . . . Unfortunately, however, the Government's failure to submit timely some evidence by which to measure [the victim's] financial loss precludes us from affirming the District Court's modest restitution order."); *United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir. 2001) ("[R]estitution orders pertaining to costs associated with medical and related services must be specific and contain 'details as to dollars not generalities,' and . . . the district court must support its restitution order with findings of fact in the record."); *United States v. Laney,* 189 F.3d 954, 967 n.14 (9th Cir. 1999) ("district courts must estimate the amounts that victims will spend on future counseling with reasonable certainty, in accordance with the procedures set forth in 18 U.S.C. § 3664.").

In addition, while we would like to think it self-evident that Defendant's crimes against Minor 2 necessitate mental health treatment, the law requires more, which the Government did

not provide.  Specifically, the Government was required to "establish that the defendant's conduct has directly and proximately caused the losses for which the Government seeks restitution."  *United States v. Anthony*, 22 F.4th 943, 950 (11th Cir. 2022) (internal quotation marks omitted).  Defendant correctly argues that Minor 2 required mental health treatment prior to his crimes against her.  While this does not foreclose restitution for treatment to address those crimes, the Government is required to differentiate between the treatment Minor 2 seeks as a direct and proximate cause of Defendant's crimes and that which she would have sought regardless.  *See id.*  ("In recommending restitution for a lifetime of therapy and medication costs, [the Government's expert] did not even attempt to disaggregate the harms Mr. Anthony caused from the other harms R.W. suffered.").

In nearly every case found addressing this topic, the Government has met its burden by offering expert testimony linking the need for treatment to the defendant's actions, diagnosing the victim, and opining on what type and length of treatment is necessary.  For example, the Third Circuit has affirmed a district court determination that a defendant distributing child pornography of the victim was the proximate cause of her need for psychiatric care because:

> In reaching its conclusion, the District Court relied upon the expert opinion of Jodi Pritchard, a licensed social worker and treatment coordinator at the long-term psychiatric facility where the girl was treated. In a letter to the court, Ms. Pritchard stated that Crandon's contacts with the victim were "a significant contributing factor in [the girl's] worsening depression and suicide ideation." The government also presented a report of the psychiatrist who treated the girl and concluded that Crandon's conduct "exacerbated" her depression and led to her hospitalization.

*United States v. Crandon,* 173 F.3d 122, 126 (3d Cir. 1999) (citations omitted) (alterations in original).  *See also, e.g., United States v. Sanderson,* 515 Fed. App'x 16, 19 (2d Cir. 2013) ("The government's proposed figure was supported by the affidavit of a licensed social worker who had worked extensively with the victim, and who stated that she based her conclusions regarding

4

future need for care upon her professional experience."); *United States v. Palmer*, 643 F.3d 1060, 1068 (8th Cir. 2011) ("[The] expert opinion provided the district court with a reasonable estimate of the child's future costs of psychological treatment, and such opinion stands unrebutted in the record."); *United States v. Sukhtipyaroge*, 394 F. Supp. 3d 951, 963-64 (D. Minn. 2019) ("In support of its restitution request, the United States presented the testimony of A.S.M.'s therapist, William Carlson.  Carlson testified credibly about A.S.M.'s clinical diagnosis, A.S.M.'s need for past and ongoing treatment, and the costs associated with treatment and medication.  Carlson prepared a report that calculated the projected cost of treatment and medication through December 2019, based on Carlson's assessment as to the necessary length and frequency of treatment.").

Moreover, even when the Government *does* present an expert, courts may decline to impose the requested restitution where the expert's opinion does not sufficiently outline the parameters for the victim's treatment or connect it to the defendant's conduct.  *See, e.g., Anthony, supra; United States v. Jennings,* No. 09-50, 2010 WL 4236643, at *2 (W.D. Mo. Oct. 14, 2010) ("Although the Court finds [the Government's expert] to be credible, well-meaning, and accomplished, his opinion here is inherently speculative because it is based on severly [sic] limited information[,] . . . the resiliency of victims varies widely, and there is no way a court can accurately determine a victim's future mental health needs without an individualized assessment.").  Given that the Government's attempt to estimate restitution did not rise to this level, we cannot conclude that it allows for a restitution award "based on the amount of loss *actually* caused by the defendant's conduct." *United States v. Huff,* 609 F.3d 1240, 1247 (11th Cir. 2010) (emphasis in original) (citations omitted).

Requiring additional evidence does not just protect defendants' rights, but also the victims'. Restitution is mandatory under the TVPRA and the Mandatory Victims Restitution Act, 18 U.S.C. § 3664(f)(1)(A); this Court has no discretion to "award restitution for anything less than the full amount of the victim[s'] losses[.]" *United States v. Desnoyers,* 708 F.3d 378, 389 (2d Cir. 2013). We are required "to make the victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Robers,* 698 F.3d 937, 943 (7th Cir. 2012) (internal quotation marks omitted). The Government's evidence in its current state does not allow us to do this. For example, there is no explanation or medical basis for why Minor 2 requires only two years of psychotherapy when courts routinely award restitution for a lifetime of mental health treatment to victims of sex trafficking. *See, e.g., United States v. Lewis,* 791 F.Supp.2d 81, 87-88 (D.D.C. 2011) (granting restitution for "weekly therapy into adulthood" to one victim of sex trafficking and "a lifetime of ongoing individual therapy" to three others).

We also note that there is no restitution request for mental health treatment of Minor 1 who, unlike Minor 2, Defendant successfully forced to perform commercial sex with at least six men per day for 15 days. Nor does the Government account for the fact that "mental and physical health alone rarely tell the whole story of the losses incurred by victims, evidenced by the statute's affirmative inclusion of costs like transportation, housing, and child care." *United States v. Whitley*, 354 F. Supp. 3d 930, 935 (N.D. Ill. 2019). Indeed, another district court has recognized that, according to scientific research, "[s]ex trafficking victims who escape abusive situations often need an array of financial and other supports to begin building stable lives . . . includ[ing] housing assistance, legal assistance, physical . . . health services . . . substance abuse treatment, education, and job training, among other services." *Id.* at 236 (internal quotation

6

marks omitted). For these reasons, "[t]he CDC recently estimated the lifetime burden . . . to be $210,012 per victim. This includes immediate costs, as well as loss of productivity and increased healthcare costs in adulthood." *Id.* (internal quotation marks omitted).

It may be that Minor 1 and Minor 2 did not request and do not want restitution for these costs, or that a medical diagnosis of either of them does not support it. However, that must be made clear for this Court to ensure that the victims are fully compensated for their actual losses, as it is required to do. Accordingly, we will extend the deadline for imposing restitution under 18 U.S.C. § 3664(d)(5) for 90 days to allow the Government to present additional evidence in support of its request for two years of weekly therapy for Minor 2, and for any additional costs for Minor 1 or Minor 2 that may be warranted based upon that new evidence. *See United States v. Fumo,* 655 F.3d 288, 321-22 (3d Cir. 2011) (citing *Dolan v. United States,* 560 U.S. 605 (2010)) ("[T]he 90–day 'deadline' for determining the victim's losses does not bar a court from ordering restitution even after 90 days as long as there is no substantial prejudice to the defendant."). We discern no substantial prejudice to Defendant in doing so, as he has already been sentenced and this order was prompted by his objection to the Government's request for restitution.

For the foregoing reasons, the deadline to impose restitution is extended for 90 days to allow the government to present additional evidence consistent with this Memorandum. An appropriate Order follows.

**BY THE COURT:**


 */s/ R. Barclay Surrick*_____
**R. BARCLAY SURRICK, J.**